1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6
7
8

MYEESHA PARKER,

9                                    Plaintiff,

10              v.

11   COSTCO WHOLESALE CORP.,

12                                    Defendant.

Case No. C25-0519-SKV

ORDER IMPOSING SANCTIONS

13

14          Having reviewed Mr. Oscar E. Desper III's ("Counsel") Response to this Court's Order

15   to Show Cause ("OSC Response"), the Court imposes sanctions for misconduct perpetrated

16   through three of his filings in this case.

17                                I.        BACKGROUND

18          This case started with a narrow service dispute.  Plaintiff Myeesha Parker ("Plaintiff" or

19   "Ms. Parker") brought employment and discrimination claims against her former employer,

20   Costco Wholesale Corporation ("Defendant"), in King County Superior Court.  Defendant

21   removed the case to this Court and moved for summary judgment on grounds that Plaintiff failed

22   to serve it with process before the statute of limitations on her claims lapsed.  Plaintiff opposed

23   summary judgment, Dkt. 20, and moved to strike a declaration accompanying Defendant's

supplemental briefing, Dkts. 31, 42.  The Court identified material misstatements and misrepresentations in those filings, which contained hallucinated case and record citations and legal errors consistent with unverified generative artificial intelligence ("AI") use and ordered Counsel to show cause as to why sanctions should not issue.[1]  *See* Dkt. 46.  The Court outlines its observations before turning to Counsel's explanations.

A.    <u>Response to Defendant's Motion for Summary Judgment</u>

Review of Plaintiff's Response to Defendant's Motion for Summary Judgment ("MSJ Response") indicated the filing relied on inapplicable law, misrepresented and misquoted the law and the record, and included a wide array of idiosyncratic citation errors.  For brevity, the Court summarizes the most egregious examples.

First, the MSJ Response did not rely on applicable law.  When briefing the legal standard for summary judgment, Counsel relied on Washington state court cases.  Washington state court opinions interpreting the Washington summary judgment rule are neither instructive nor binding on federal courts.  Relevance aside, Counsel also selected cases that largely date back to the 1960s through the early 2000s despite the widespread availability of recent precedent.  Later in the brief, he suddenly switched to federal law, discussing Federal Rule of Civil Procedure 4(m) and Ninth Circuit case law on extending the time for service.  *See* Dkt. 20 at 12–18.  But Washington state law applied to the service and limitations issues raised by Defendant's Motion for Summary Judgment.  *See* Dkt. 44 at 7 (discussing applicability of Washington law).  Case law cited in Defendant's Motion for Summary Judgment made that clear.  *See* Dkt. 13 at 7

---

[1] The Court will not impose sanctions for the Motion for Leave to File Amended Complaint.  *See* Dkt. 37.  That motion contains the same misquoted hybrids of inapplicable law contained in Counsel's other filings, which Counsel leaves wholly unexplained in his OSC Response.  While Counsel's argument regarding Rule 15 would have been better raised in a motion for reconsideration rather than his OSC Response, his point was well taken.  *See* Fed. R. Civ. P. 15(a)(1), advisory committee's note to 2023 amendment; Dkt. 53.

1  (discussing *Whidbee v. Pierce Cnty.*, No. C14-683-RBL, 2014 WL 7185401 (W.D. Wash. Dec.

2  16, 2014), *aff'd*, 857 F.3d 1019 (9th Cir. 2017)).  Counsel also cited to Florida and New York

3  state court decisions that interpreted Florida and New York state law on service despite neither

4  applying here.  *See* Dkt. 20 at 17–18.  In short, Counsel not only offered clearly irrelevant

5  authority but did so without any discernable framework.

6      Second, the MSJ Response included at least four case quotes attributed to cases that exist

7  but do not contain the quoted language.  For example:

| Location | Quote in MSJ Response | Counsel's Citation | Court Observations |
|---|---|---|---|
| Dkt. 20 at 6. | "Even though the basic facts may be undisputed, if different inferences may be drawn from them, then summary judgment should not be granted." | *Meissner v. Simpson Timber Co.*, 69 Wn.2d 949, 951, 421 P.2d 674 (1966) | This case exists and the quote could not be located. |
| Dkt. 20 at 6. | "Summary judgment is not to be used as a substitute for trial when material facts are in dispute." | *Blaise v. Underwood*, 62 Wn.2d 195, 197–98, 381 P.2d 966 (1963) | A case with an almost identical name and the same reporter exists.  *See Balise v. Underwood*, 381 P.2d 966 (1963).  The quote could not be located in that case. |
| Dkt. 20 at 6. | "A summary judgment is properly granted if the pleadings, affidavits, depositions or admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." | *Capitol Hill Methodist Church of Seattle v. City of Seattle*, 52 Wn.2d 359, 324 P.2d 1113 (1958) | This case exists and the quote could not be located.  Counsel's citation omitted a pincite for the purported quote.  Similar language appears at page 1116. |
| Dkt. 20 at 7. | "To overcome summary judgment, a plaintiff has only a burden of | *Scrivener v. Clark College*, 181 Wn.2d | This case exists.  Counsel's purported quote paraphrases |

| | | |
|---|---|---|
| production, not persuasion, and this may be proved through direct or circumstantial evidence." | 439,447,334 P.3d 541 (2014) | language located at page 445, not 447. |

Third, Counsel relied on at least two cases facially inapplicable to the propositions they purportedly supported. For example, on page 18 of the MSJ Response, Counsel cited "*Martel v. Clair*, 565 U.S. 648, (2012)" and "*United States v. Emmett*, 749 F.3d 817, 9th Cir. (2014)" for the proposition that "[i]n the 9ᵗʰ [sic] Circuit, the 'Interest of Justice' standard under Rule 4(m) 'is regularly applied.[']" Dkt. 20 at 18. *Martel* is a Supreme Court case that discusses appointment of counsel in habeas proceedings. *See Martel v. Clair*, 565 U.S. 648, 652 (2012) ("We hold that courts should employ the same 'interests of justice' standard that they apply in non-capital cases under a related statute, § 3006A of Title 18."). *Emmett* is an appeal regarding early termination of supervised release. *See United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014) ("The expansive phrases 'conduct of the defendant' and 'interest of justice' make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination."). Neither case contains the words "is regularly applied," which Counsel set off with an unclosed quotation mark. The citations themselves were also odd. Neither contained pincites, despite both containing commas preceding where pincites should have been included. Counsel's *Emmett* citation was also improperly formatted and inconsistent with properly formatted Ninth Circuit citations included elsewhere in the MSJ Response. *See, e.g.*, Dkt. 20 at 4, 12.

Fourth, case law quotes throughout the MSJ Response were littered with idiosyncratic typographical and wording differences from the original sources. None of the changes were

disclosed through use of brackets or ellipses.  Some citations included misspelled case names or cited to incorrect reporters.  For example:

| Location | Counsel's Citation | Court Observations |
|---|---|---|
| Dkt. 20 at 11–12. | *Beecher v. Wallace*, 381 f.2d 327, A.L.R. Fed. 861, 1967 U.S. App. LEXIS 5359 | This case exists.  *See Beecher v. Wallace*, 381 F.2d 372 (9th Cir. 1967).  Counsel purported to quote the case, but his quotes contained undisclosed punctuation, capitalization, and wording alterations or omissions. |
| Dkt. 20 at 12. | In Re Michael Sheehan, 252 F3d 507 (9th Cir. 2001) | This case exists, but the reporter number in Counsel's citation was one number off.  *See In re Sheehan*, 253 F.3d 507 (9th Cir. 2001).

Paragraphs from this case appeared in the MSJ Response without quotation marks or ellipses and brackets signaling alterations.  Whole paragraphs from the opinion were omitted without indication.  Text that did not appear in the original was inserted, and quotation marks that did not appear in the original were added. |
| Dkt. 20 at 16. | *Skribic v. QCRC Assoc.*, 761 So. 2d 349, 354 (Fla. 3d DCA 2000) | This case exists, but the name is spelled differently.  *See Skrbic v. QCRC Assocs. Corp.*, 761 So. 2d 349 (Fla. Dist. Ct. App. 2000).

The quote used by Counsel was similar to language in the Concurrence in Part with undisclosed punctuation, capitalization, and wording alterations.  Counsel included nested quotation marks that did not appear in the original text. |
| Dkt. 20 at 19. | *National Mortgage, LLC v. Wilson*, 176 A.D. 3d, 1087 | This case exists, but Counsel's citation omitted the year and a pincite.  *See Nationstar Mortg., LLC v. Wilson*, 176 A.D.3d 1087, 111 N.Y.S.3d 98 (2019).  The case contains language at page 1089 similar to language in the MSJ Response with punctuation, capitalization, and wording differences.  Counsel did not |

| | | indicate quoted language with quotation marks. |
|---|---|---|

Finally, Counsel included hallucinated and inaccurate quotes to the record. This was particularly egregious given that he sought to demonstrate a question of material fact precluded summary judgment and attempted to do so by relying on mischaracterized evidence. For example, Counsel represented that Plaintiff's process server, Katlyn Bain ("Bain"), provided a declaration and cited Exhibit 3 as the source of a declaration quote. *See* Dkt. 20 at 2. The cited document was not a declaration, nor did it contain the language quoted by Counsel. *See* Dkt. 21-3 at 2–3. Instead, substantially similar language appeared in Bain's Declaration of Service filed by Defendant. *See* Dkt 14 at 7. Counsel apparently presented a partially quoted and paraphrased hybrid as a direct quotation.

Counsel further purported to quote an investigation report generated by ABC Messenger Service after he emailed them to question service. He represented that the report "state[d], in pertinent part: 'The Process Server served Costco the Complaint, Summons… [sic] on March 3, 2025. Jody Chindavat accepted the documents. Multiple sets of documents were served on Costco, at that time.'" Dkt. 20 at 8. That quote did not appear in the investigation report Counsel filed as Exhibit 9. *See* Dkt. 21-9.

Counsel also represented that the same report "state[d] that, Katlyn Bain, the process server, handed each set of documents to Chindavat, individually, ensuring that each required document was presented." Dkt. 20 at 8. The report actually stated, in pertinent part: "Jody Chavidant [sic] accepted the documents. At the time of this service, they had multiple sets of documents to serve at the address. The process server handed each one to her individually. She usually briefly reviews each document before accepting them." Dkt. 21-9 at 4. Clearly—and

1    crucially—the report did not state that Bain "ensur[ed] that each required document was

2    presented."  Dkt. 20 at 8.

3        Viewed collectively, these legal, citation, and factual errors bore the hallmarks of

4    unreviewed AI-generated work product or exceedingly negligent drafting.

5    B.    <u>Motion to Strike and Associated Reply</u>

6        The quality of Counsel's filings further deteriorated.  Following initial review of the

7    parties' summary judgment briefing, the Court ordered, and the parties filed, supplemental

8    briefing.  *See* Dkt. 25.  Plaintiff moved to strike Defendant's supplemental brief and

9    corresponding declaration at Docket Nos. 26 and 27 on grounds that they exceeded the ten-page

10    limit set by the Court and violated Local Civil Rule ("LCR") 7.  *See* Dkt. 31.  Specifically,

11    Counsel argued that Defendant's filings violated LCR 7(e)(3) because it did not seek leave to file

12    an over-length brief and LCR 7(g), which Counsel represented prohibits use of declarations and

13    exhibits to circumvent page limits.  *See* Dkt. 31 at 2.  Neither subsection contains the content he

14    represented.  *See* Local Rules W.D. Wash. LCR 7(e)(3) (word limits for certain motions,

15    responses, and replies that apply "[e]xcept as otherwise provided by court order"); Local Rules

16    W.D. Wash. LCR 7(g) (procedure for requests to strike material in motions or briefs).  Instead,

17    LCR 7(f) governs requests to file over-length briefs.

18        Defendant's supplemental brief contained ten pages of substance and a certificate of

19    service on an eleventh page.  *See* Dkt. 26.  "[C]ertificates of service need not be included within

20    the . . . page limit."  Local Rules W.D. Wash. LCR 7(e)(6).  Defendant's corresponding

21    declaration contained no argument whatsoever.  It simply provided the declarant's information

22    and stated that a true and correct copy of the docket for a case relied on in Defendant's

23    supplemental brief was attached.  *See* Dkt. 27.  "This district's local rules impose word limits on

1    motions and briefs, but no similar limits on declarations." *Mills v. Zeichner*, No. C23-1130-JLR,

2    2024 WL 37108, at *1 (W.D. Wash. Jan. 3, 2024) (citing Local Rules W.D. Wash. LCR 7(e)).

3            Counsel filed his motion after Defendant pointed out that Counsel's position, previewed

4    in a declaration struck as procedurally improper, was factually and legally incorrect.  *See* Dkt. 30

5    at 2; Dkt. 29 at 1.  Inexplicably, Counsel dated his motion as June 25, 2025, despite the fact the

6    motion sought to strike Defendant's supplemental brief filed on August 1, 2025.  Defendant then

7    responded to Counsel's motion, again identifying the same errors and misrepresentations of the

8    Local Rules.  *See* Dkt. 41 at 2–3.  Counsel then filed a nonsensical Reply that continued to press

9    the same legally and factually indefensible positions.

10           For example, he argued that, "[w]hile LCR 7(e)(6) excludes certificates of service from

11   page limits, this Rule cannot cure Defendant's substantive violation of the Court's clear

12   directive" and that, "by filing substantive legal arguments across 11 pages of their Declaration,

13   regardless of how the final page is characterized," Defendant violated the Court's ten-page limit.

14   Dkt. 42 at 2.  This argument had two glaring flaws.  It conflated the two documents Counsel

15   purported to take issue with—Defendant's eleven-page supplemental brief and its eight-page

16   supporting declaration.  And worse yet, it asked the Court to enforce a rule while, in the very

17   same breath, dismissing its content.

18           Later in the Reply, Counsel stated that "Defendant's assertion that the Culicover

19   Declaration contains 'no argument' is completely disingenuous."  *Id.*  "While styled as a factual

20   Declaration, the document strategically introduces case law and precedent that directly supports

21   Defendant's legal position."  *Id.*  The case citation Defendant included, and all arguments

22   pertaining to it, were located within the ten pages of substance in Defendant's supplemental

23

brief.  The Declaration merely presented a PDF export of the cited case's docket.  *See* Dkt. 27 at 5–8.

Plaintiff's Reply was otherwise notable in two respects.  First, the text appeared to have been copy-pasted from a generative AI program without any quality control.  Straight, as opposed to curly, apostrophes and quotation marks remained throughout, indicating the content was likely not typed into a word processor.  At some point, the program apparently experienced, and documented, an "[]artificial error[.]"  Dkt. 42 at 2.  Second, Defendant twice put Counsel on notice that his position relied on demonstrably inaccurate characterizations of the Local Rules and Defendant's filings.  Yet Counsel opted to file a Reply that doubled down on his position instead of withdrawing his frivolous motion.  Together, the legal, factual, "artificial," and typographical errors indicated to the Court that the Reply was generated without any meaningful attorney oversight and filed despite Counsel knowing, or having reason to know, the positions taken were indefensible.

C.    Counsel's Response to the Order to Show Cause

Because these filings indicated Counsel may have violated his ethical duties and Federal Rule of Civil Procedure 11, the Court ordered Counsel to show cause as to why sanctions should not issue.  *See* Dkt. 46.  His OSC Response offered distinct explanations for his errors in the above two sets of filings.[2]

Counsel admitted that Callidus AI, "a specialized legal 'AI'" tool, was used to draft the MSJ Response.  *See* Dkt. 47 at 1.  He explained that he hired a contract attorney with more federal court experience to draft the document and was not aware that attorney had used AI until he received the Order to Show Cause.  *See id.* at 2, 10.  He took responsibility for the program's

---

[2] Counsel did not request a hearing.  *See* Dkt. 47.

use, "for not checking some quotes," and for "submitting some improper case citations." *Id.* at 1–2. He also emphasized that he did not intend to submit a filing with false information and did not plan to use AI to prepare any future filings. *See id.* at 2–3. He did not disclose what level of review, if any, he performed on the contract attorney's work product.

Counsel also provided further explanation for some specific errors identified by the Court in its Order to Show Cause. He attributed his comingling of state and federal law to the *Erie* Doctrine, *see id.* at 9; *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), understanding it to instruct that, "[w]hen a case is in federal court under diversity jurisdiction, the Court must apply State substantive law and Federal procedur[al] law[] when adjudicating State law claims." Dkt. 47 at 9. Notably, Defendant removed this case on federal question grounds, and diversity jurisdiction does not lie where, as here, the parties are citizens of the same state. *See* Dkt. 1 at 3; Dkt. 1-1 at 2. Counsel went on to explain that he understood the summary judgment standard "was essentially the same" in federal and Washington state courts "with some nuance." *Id.* at 10. Counsel did not explain why he submitted a filing to the Court that briefed Washington procedural rules despite his understanding that federal procedural rules governed and his awareness that the standards may not be coextensive.

Finally, Counsel provides explanations regarding the factual errors in the MSJ Response. Those explanations contain additional quotation errors. Regarding Bain's Declaration of Service, Counsel clarifies it was inadvertently omitted from his MSJ Response exhibits but again misquotes the source document. *Compare id.* at 7 ("Her Service Declaration states: 'That she personally delivered 1 true and correct copy of the Summons and Complaint…To [sic] Jody Chindavat'"), *with* Dkt. 14 at 7 ("this declarant served the above described documents upon Costco c/o John Sullivan, Registered Agent by then and there personally delivering 1 true and

correct copy(ies) thereof, by then presenting to and leaving the same with Jody Chavidant[]
[sic].").  Counsel does not include record citations for other quotations he seeks to explain, and
his explanations appear to be nested within the purported corrected quotations.  Quotation marks
are left unpaired, making his explanations difficult to identify and follow.  *See* Dkt. 47 at 7.

Regarding his representation that ABC Legal's Investigative Report "states that, Katlyn
Bain, the process server, handed each set of documents to Chindavat, individually, ensuring that
each required document was presented[,]" Dkt. 20 at 8, Counsel contends that was not a quote
but legal argument.  *See* Dkt. 47 at 8.  The document he relies upon plainly cannot support that
argument or characterization.  No documents in the record support that statement either.

Turning to the Motion to Strike and the associated Reply, Counsel's OSC Response does
not indicate whether he or someone else used AI to draft those documents or how they came to
include such blatant legal, factual, and typographical errors.  Instead, he apologizes to the Court
and states that, before receiving the Order to Show Cause, he apologized to Defendant's counsel.
*See id.* at 4.  Counsel explains that he thought the case citation included in Defendant's
Declaration was technically a legal argument in excess of the ten-page limit.  *See id.*  He also
claims to have understood Defendant to have sought leave "to file and extend their brief" and
thus conceded to running afoul of the ten-page limit.  *See id.*  Counsel does not cite to any filing
by Defendant seeking leave to file an overlength response, and review of the record indicates
Defendant never made such a request.[3]

///

///

///

---

[3] Defendant did seek leave to respond to Counsel's original request to strike its declaration, which Counsel
improperly made through his own declaration instead of a motion.  *See* Dkts. 29, 30.

1

## II.    LEGAL STANDARDS

2      The Court's authority to impose sanctions derives from multiple sources.  Relevant here

3  are the Federal Rules of Civil Procedure, this Court's inherent powers, a statutory provision for

4  attorney's fees, and this District's Local Rules.

5  A.    Rule 11

6      Federal Rule of Civil Procedure 11(b) provides that, by presenting to the Court a filing or

7  later advocating it, an "attorney . . . certifies that to the best of the person's knowledge,

8  information, and belief, formed after an inquiry reasonable under the circumstances: . . . it is not

9  being presented for any improper purpose, . . . the claims, defenses, and other legal contentions

10  are warranted by existing law or by a nonfrivolous argument for extending, modifying, or

11  reversing existing law or for establishing new law[, and] . . . the factual contentions have

12  evidentiary support[.]"  Fed. R. Civ. P. 11(b).  Rule 11 imposes a non-delegable duty on a

13  signing attorney "to satisfy himself that the filed paper is factually and legally responsible" and

14  by signing, he represents "that he personally has applied his own judgment."  *Pavelic & LeFlore*

15  *v. Marvel Ent. Grp.*, 493 U.S. 120, 125 (1989).

16      Generally, Rule 11 "imposes an objective standard of reasonable inquiry which does not

17  mandate a finding of bad faith," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991) (citing *Bus.*

18  *Guides, Inc. v. Chromatic Commc'ns Enters., Inc.,* 498 U.S. 533, 548–549 (1991)), or "consider

19  the attorney's subjective good faith."  *Lake v. Gates*, 130 F.4th 1064, 1068 (9th Cir. 2025) (citing

20  *Bus. Guides, Inc. v. Chromatic Commc'ns Enter., Inc.*, 892 F.2d 802, 811 (9th Cir. 1989), *aff'd*

21  498 U.S. 533 (1991)).  A reasonable inquiry "means an inquiry reasonable under 'all the

22  circumstances of a case,'" *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1364 (9th Cir.

23  1990) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401 (1990)).  Relevant

circumstances include time available for investigation, plausibility of legal positions, and reliance on another member of the bar.  *See* Fed. R. Civ. P. 11, advisory committee's note to 1983 amendment.

In the Ninth Circuit, a heightened standard applies when the Court acts *sua sponte*.  In such cases, sanctions "will ordinarily be imposed only in situations that are *akin to a contempt of court*."  *United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1116 (9th Cir. 2001) (quoting *Barber v. Miller,* 146 F.3d 707, 711 (9th Cir. 1998)); *see also* Fed. R. Civ. P. 11, advisory committee's note to 1993 amendment ("show cause orders will ordinarily be issued only in situations that are akin to a contempt of court").  This is because when the Court acts on its own motion, instead of that of an opposing party, Rule 11(c)(2)'s "safe harbor" provision permitting lawyers to correct or withdraw challenged filings does not apply and alternative safeguards are warranted.  *See United*, 242 F.3d at 1116.

The "akin to contempt" standard "requires the court to find 'bad faith or conduct tantamount to bad faith.'"  *Rocha v. Fiedler*, No. 24-3692, 2025 WL 1219007, at *1 (9th Cir. Apr. 28, 2025) (quoting *In re Lehtinen*, 564 F.3d 1052, 1061 (9th Cir. 2009), *overruled on other grounds by*, *In re Gugliuzza*, 852 F.3d 884, 898 (9th Cir. 2017)).  Conduct tantamount to bad faith includes egregious, "outrageously improper, unprofessional and unethical" acts exceeding mere ignorance or negligence.  *Id.* (citing *In re Lehtinen*, 564 F.3d at 1061); *see In re Nakhuda*, 544 B.R. 886, 902 (B.A.P. 9th Cir. 2016), *aff'd*, 703 F. App'x 621 (9th Cir. 2017); *see also Benjamin v. Costco Wholesale Corp.*, 779 F. Supp. 3d 341, 347 (E.D.N.Y. 2025) ("frivolous-plus" bad-faith standard).

Where, after providing notice and an opportunity to respond, the Court determines that Rule 11(b) has been violated, it may impose an appropriate sanction on any attorney that violated

1    the rule or is responsible for the violation.  *See* Fed. R. Civ. P. 11(c)(1), (3).  Sanctions may

2    include fines and nonmonetary directives but must be "limited to what suffices to deter repetition

3    of the conduct or comparable conduct by others similarly situated."  Fed. R. Civ. P. 11(c)(4).

4    B.    Inherent Power

5         "Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to

6    manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"

7    *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quoting *Link v. Wabash R.*

8    *Co.,* 370 U.S. 626, 630–631 (1962)).  "Because inherent powers are shielded from direct

9    democratic controls, they must be exercised with restraint and discretion."  *Roadway Exp., Inc. v.*

10   *Piper*, 447 U.S. 752, 764 (1980).  "A primary aspect of that discretion is the ability to fashion an

11   appropriate sanction for conduct which abuses the judicial process."  *Chambers*, 501 U.S. at 44–

12   45.

13        Whereas other sanctions mechanisms "reach[] only certain individuals or conduct, the

14   inherent power extends to a full range of litigation abuses" and fills the gaps left by other

15   mechanisms.  *Id.* at 46.  "[W]hen there is bad-faith conduct in the course of litigation that could

16   be adequately sanctioned under the [Federal] Rules, the court ordinarily should rely on the Rules

17   rather than the inherent power."  *Id.* at 50.  "But if in the informed discretion of the court, neither

18   the statute[, 28 U.S.C. § 1927,] nor the [Federal] Rules are up to the task, the court may safely

19   rely on its inherent power."  *Id.*

20        As with *sua sponte* Rule 11 sanctions, the Court must specifically find that an attorney's

21   conduct constituted, or was tantamount to, bad faith before imposing sanctions pursuant to its

22   inherent powers.  *See Roadway Exp.*, 447 U.S. at 767.  Bad faith "includes a broad range of

23   willful improper conduct."  *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).  "A party

1    'demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a

2    court order.'" *Fed. Trade Comm'n v. Amazon.com, Inc.*, No. C23-0932-JHC, 2025 WL

3    1907413, at *1 (W.D. Wash. July 10, 2025) (quoting *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961

4    (9th Cir. 2006)).  On the other hand, conduct "tantamount to bad faith" includes "reckless

5    misstatements of law and fact, when coupled with" "an additional factor such as frivolousness,

6    harassment, or an improper purpose." *Fink*, 239 F.3d at 993–94; *Fed. Trade Comm'n*, 2025 WL

7    1907413, at *1.  Mere ignorance, negligence or recklessness, without more, does not meet that

8    bar.  *See Fink*, 239 F.3d at 993.

9    C.    <u>28 U.S.C. § 1927</u>

10         Congress has also made special provision for awarding excess costs, expenses, and

11   attorneys' fees incurred because an attorney "multiplie[d] the proceedings . . . unreasonably and

12   vexatiously."  28 U.S.C. § 1927.  "[S]anctions pursuant to section 1927 must be supported by a

13   finding of subjective bad faith." *Lake*, 130 F.4th at 1070 (citing *Blixseth v. Yellowstone*

14   *Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015)).  "[B]ad faith is present when an

15   attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for

16   the purpose of harassing an opponent." *Id.* (alteration in original).  So, "[f]or sanctions to apply,

17   if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be

18   intended to harass." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996).

19   D.    <u>Local Rules</u>

20         All attorneys appearing before this Court are required to be familiar, and comply with,

21   the Washington Rules of Professional Conduct ("RPC").  *See* Local Rules W.D. Wash. LCR

22   83.3(a).  Those rules set standards for competence, diligence, and candor toward the tribunal, and

23   they prohibit misconduct, including dishonesty.  *See* RPC 1.1 (competence); RPC 1.3

(diligence); RPC 3.3 (candor); RPC 8.4 (misconduct).  Rule 1.1 requires lawyers to provide

competent representation to clients.  *See* RPC 1.1.  "Competent representation requires the legal

knowledge, skill, thoroughness and preparation reasonably necessary for the representation."  *Id.*

"To maintain the requisite knowledge and skill, a lawyer should keep abreast of changes in the

law and its practice, including the benefits and risks associated with relevant technology[.]"

RPC 1.1, Comment 8.  "The required attention and preparation are determined in part by what is

at stake[.]"  RPC 1.1, Comment 5.  Rule 1.3 requires lawyers to "act with reasonable diligence

and promptness in representing a client."  RPC 1.3.  Rule 3.3 requires that "[a] lawyer shall not

knowingly[] . . . make a false statement of fact or law to a tribunal or fail to correct a false

statement of material fact or law previously made to the tribunal by the lawyer[.]"  RPC 3.3.

And finally, Rule 8.4 warns that "[i]t is professional misconduct for a lawyer to[] . . . engage in

conduct involving dishonesty, fraud, deceit or misrepresentation[ or] . . . conduct that is

prejudicial to the administration of justice[.]"  RPC 8.4.

  Discipline for violations of those ethical rules can include suspension of the privilege of

practicing before this Court, reprimand or admonition, financial penalties, supervision conditions

such as continuing legal education, or referral to a state bar association.  *See* Local Rules W.D.

Wash. LCR 83.3(c)(3)–(4); *Barton v. Delfgauw*, No. C21-5610-DGE, 2025 WL 1707568, at *5

(W.D. Wash. June 18, 2025).  A judge may initiate discipline by presenting a written grievance

to the Chief Judge.  If the Chief Judge determines the grievance should be pursued, he may refer

it to another judge.  The Chief Judge or reviewing judge may, at any time, determine that the

grievance is more appropriately referred to the Washington State Bar Association and make a

referral to that body.  *See* Local Rules W.D. Wash. LCR 83.3(c)(5)(B).

1    Absent clear instruction from the Ninth Circuit on the standard of proof for imposing

2    sanctions, this Court applies a clear and convincing evidence standard.  *See Fed. Trade Comm'n*,

3    2025 WL 1907413, at *1.

4                         III.    <u>DISCUSSION</u>

5    The Court appreciates that Counsel took full responsibility for his filings and apologized

6    to the Court and opposing counsel.  However, despite his remorse, sanctions are warranted.

7    A.    <u>MSJ Response</u>

8    When the Court contemplates imposition of Rule 11 sanctions *sua sponte*, there are three

9    analytical steps.  First, did the conduct violate Rule 11?  If yes, was the conduct committed in

10   bad faith or tantamount to bad faith?  If yes again, the Court identifies an appropriate sanction

11   sufficient to deter repetition of the conduct or comparable conduct by similarly situated

12   attorneys.  *See* Fed. R. Civ. P. 11(c)(4).

13   Rule 11 was undoubtedly violated by Counsel's submission of the MSJ Response.  That

14   is, Counsel certified his arguments' legal and factual contentions were warranted, knowing he

15   had not verified the authority in his brief and that some of his brief relied on inapposite law.

16   While Counsel says "some" citations were not checked, the Court cannot credit his

17   inference that the brief was subjected to any meaningful scrutiny.  The Court's review indicates

18   that a significant proportion of authority cited was misquoted, miscited, misrepresented, or

19   inapplicable.  Many of the errors were obvious on the face of the document.  A competent

20   attorney would have, upon review of the arguments and authority cited, flagged that something

21   was wrong.  Likewise, many errors would have been rendered obvious by review of the authority

22   cited in Defendant's Motion for Summary Judgment.  And worse yet, Counsel indicates that he

23   knew federal procedural law applied and that there may be some differences between state and

1   federal summary judgment standards, but he nonetheless submitted a brief that relied on

2   inapplicable case law.  To be sure, whether state or federal law applies is a nuanced and complex

3   topic, but the selection is not haphazard.  Ultimately, the MSJ Response failed to apprise the

4   Court of any law or legal theory that supported Ms. Parker's cause, and Counsel's OSC

5   Response further underscores the Court's concern about Counsel's candor and competency

6   identifying and marshaling applicable law.

7          The treatment of exhibits and factual representations further establish that Counsel either

8   did not conduct an adequate examination of the evidence or misrepresented it.  Altering quotes

9   without indication and placing paraphrased content in quotation marks is unacceptable.  It

10  misrepresents facts to the Court.  Counsel's erroneous quotations sent the Court, and Defendant,

11  on a wild goose chase through the record in search of evidence that did not actually exist.

12  Counsel's OSC Response contained similar sloppiness which rendered his argument and sources

13  indecipherable.

14         "The filing of papers 'without taking the necessary care in their preparation' is an 'abuse

15  of the judicial system' that is subject to Rule 11 sanction."  *Mata v. Avianca, Inc.*, 678 F. Supp.

16  3d 443, 460 (S.D.N.Y. 2023) (quoting *Cooter*, 496 U.S. at 398); *see also Guild Mortg. Co. LLC*

17  *v. CrossCountry Mortg. LLC*, No. C21-1376-JCC-MLP, 2022 WL 18999842, at *13 (W.D.

18  Wash. Dec. 6, 2022), *report and recommendation adopted*, No. C21-1376-JCC-MLP, 2023 WL

19  1860663 (W.D. Wash. Feb. 9, 2023) ("failure to investigate . . . led to false factual assertions

20  before this Court[,]" which merited sanctions).  At minimum, "the duties imposed by Rule 11

21  require that attorneys read, and thereby confirm the existence and validity of, the legal authorities

22  on which they rely[]" to ensure their arguments are legally tenable.  *Park v. Kim*, 91 F.4th 610,

23  615 (2d Cir. 2024).  That review did not happen here.

The Court finds Counsel's failure to verify the legal and factual support for his MSJ Response, especially in view of the obviousness of the errors, his insinuation that he only failed to verify "some" citations, and his implicit admission that he knew the brief relied on inapposite sources of law "outrageously improper, unprofessional and unethical" and tantamount to bad faith. *Rocha*, 2025 WL 1219007, at *1; *see Johnson v. Dunn*, No. C21-1701-AMM, 2025 WL 2086116, at *16–17 (N.D. Ala. July 23, 2025) (finding conduct tantamount to bad faith when an attorney signed and filed motions without checking the citations and without knowledge that the drafter used generative AI); *Mata*, 678 F. Supp. 3d at 464 (finding subjective bad faith where an attorney had not read any cases cited in his opposition brief or taken steps to verify whether its assertions of law were warranted). That conduct also calls into serious question Counsel's adherence to his broader ethical duties as a member of this bar. *See* Local Rules W.D. Wash. LCR 83.3(a).

So what is the appropriate sanction? That is a difficult question given the recent tidal wave of similar misconduct hitting the federal courts. Courts have already made clear the many harms that flow from submitting fake citations and filing unverified generative AI outputs. *See, e.g.*, *Mata*, 678 F. Supp. 3d at 448. Such conduct prejudices clients, undermines faith in attorneys and the justice system, and compels diversion of public resources from pending cases. *See id.* Yet attorneys have not been sufficiently deterred by financial sanctions imposed to date. Or perhaps the allure of obtaining speedy work product through AI still makes it worth the gamble. *See Johnson*, 2025 WL 2086116, at *1 ("As a practical matter, time is telling us – quickly and loudly – that . . . [reprimands and modest fines] are insufficient deterrents."); *Davis v. Marion Cnty. Superior Ct. Juv. Det. Ctr.*, No. C24-1918-JRS-MJD, 2025 WL 2502308, at *4 (S.D. Ind. Sept. 2, 2025) (noting that while "[m]onetary sanctions ranging from $2,000 to $6,000

1    ha[d] been imposed in similar contexts in the past few years[,]" the volume of recent cases

2    addressing unverified, AI-generated filings indicates modest financial sanctions fail to deter).

3            Indications that AI-generated work product may be improving further complicate the task

4    of devising appropriate sanctions.  Unlike in earlier cases sanctioning attorneys for submitting

5    entirely fake case citations, the cases offered by Counsel do exist and some generally stand for

6    the propositions attributed to them through hallucinated quotations.  *See, e.g.*, *Mata*, 678 F. Supp.

7    3d at 454–56.  But the quotations Counsel included do not *actually* exist.  Sanctions correspond

8    to attorney misconduct, and the misconduct at issue here is not made lesser by serendipitous

9    technological advance.  Irrespective of how far off the fake quotations are, Counsel certified his

10   brief's content knowing he had not checked it, and the brief, as a whole, presented inapplicable

11   law.  AI will continue to improve and may ultimately play a larger role in legal research.  Even if

12   those developments occur, there is no basis under the current federal civil and ethics rules to find

13   attorneys using AI blindly should face lesser consequences if their unverified representations

14   come close to the mark.  The federal and ethics rules compel a far higher standard.

15           The Court also considers the fact that the MSJ Response was drafted by another attorney

16   hired to perform legal services.  The RPCs contemplate attorneys retaining others with certain

17   specialties or competencies when necessary.  *See* RPC 1.1, Comments 1, 6.  Many good

18   attorneys, and indeed judges, work with the support of a team.  Here, Counsel indicates he hired

19   a contract attorney more experienced in federal court to draft the MSJ Response.  The Court

20   takes no issue with that decision.  However, Counsel's Rule 11 and ethical duties remained non-

21   delegable.  *See Pavelic*, 493 U.S. at 126.  He still had a duty to brush up on federal practice and

22   procedure at the point this case was removed to federal court to ensure he could adequately

23   represent his client.  He still had a duty to verify the accuracy of all filings he signed.  A brief

1    skim of the contract attorney's work product, paired with a basic understanding of federal

2    procedure, would have revealed many of the flaws now at issue and the need for further

3    diligence.  Accordingly, the fact that the MSJ Response was researched and drafted by a contract

4    attorney does not mitigate Counsel's violations of nondelegable duties or afford grounds to

5    excuse such blatant and extensive errors.  *See Cedar Lane Techs. Inc. v. Blackmagic Design Inc.*,

6    No. C20-1302-VC, 2020 WL 6789711, at *4 (N.D. Cal. Nov. 19, 2020) (imposing sanctions on

7    local co-counsel who signed an opposition brief without reviewing it to ensure that it did not

8    contain frivolous arguments or misleading statements.); *Dehghani v. Castro*, 782 F. Supp. 3d

9    1051, 1058, 1060, 1062 (D.N.M. 2025) (affirming sanctions where an attorney filed a brief

10   drafted by a contract attorney without reviewing authority cited, and the brief relied on

11   hallucinated cases and quotations).

12        The Court credits Counsel's apology with respect to the MSJ Response and

13   acknowledges that, although similar errors do appear across multiple filings, he did not file

14   additional false citations after the Court identified the issue, *see ByoPlanet Int'l, LLC v.

15   Johansson*, No. C25-60630-DSL, 2025 WL 2091025, *8 (S.D. Fla. July 17, 2025) (imposing

16   sanctions where an attorney repeatedly filed unverified AI outputs despite being on notice that

17   his AI use generated hallucinated cases and quotations), and he did not display further dishonesty

18   when responding to the Order to Show Cause, *see Mata*, 678 F. Supp. 3d at 452–57, 464–65

19   (imposing sanctions where attorneys lied about availability and research methods and submitted

20   AI-generated court opinions in response to Court orders).  So, while his conduct was

21   inexcusable, it was not magnified by further misconduct.

22        Finally, the importance of the MSJ Response for Plaintiff merits consideration.

23   Defendant moved to dismiss Ms. Parker's case with prejudice.  The MSJ Response was mission-

1  critical for Ms. Parker.  Counsel submitted it without any discernible scrutiny.  That is

2  outrageous, in addition to the reasons detailed above, because Counsel discarded a critical

3  opportunity to advocate for his client.  But what is even more outrageous is that the entire

4  situation need not have happened.  Defendant clearly stated in its Notice of Removal that it was

5  never served.  *See* Dkt. 1 at 2 ("Costco was not served with a copy of the Complaint or the

6  Summons initiating the State Court Action.").  When Counsel received that notice, there was still

7  time to remedy the service issue and set Ms. Parker's suit on the right course.  But Counsel failed

8  to act.[4]  And when Defendant moved to dismiss the case on that same ground, Counsel still did

9  not step up for his client.  Instead, he submitted the unverified MSJ Response that turned out to

10  be replete with bogus citations and legal errors.

11        In view of these considerations, the Court PUBLICALLY REPRIMANDS Counsel for

12  citing unverified, AI-generated material and for making false statements to the Court and deems

13  an ethical referral the most appropriate sanction.  *See* Fed. R. Civ. P. 11(c); Local Rules W.D.

14  Wash. LCR 83.3(c).  Counsel is therefore REFERRED to the Chief Judge for an ethical inquiry

15  and consideration of further discipline.

16  B.    Motion to Strike and Associated Reply

17        The Motion to Strike and associated Reply marshaled more misquoted and miscited law

18  to advance legally and factually indefensible positions.  *See* Dkts. 31, 42.  Counsel's comments

19  with respect to the Motion to Strike and associated Reply are unresponsive to the Order to Show

20  Cause, shed no light on the origin of those filings, and reenforce the Court's concern that he

21

22

23  ────────────────────
[4] Unfortunately, perusal of Counsel's other recent cases in this Court show that the failure to serve in this case is not an aberration.  Another one of Counsel's cases was recently dismissed as time barred by this Court after Counsel twice failed to serve the defendants with process.  *See Johnson v. Snohomish Cnty.*, No. C23-01378-JNW, 2025 WL 2107447, at *1, *3 (W.D. Wash. July 28, 2025).

1    neither read the filings with which he took issue nor the applicable rules before, during, or after

2    picking a fight. *See* Dkt. 43 at 2. That is bad faith or tantamount to it and violates Rule 11.

3    The Court struggles to believe the Motion to Strike and associated Reply were drafted by

4    an attorney, not AI, but Counsel's silence on that point is not preclusive. If Counsel drafted the

5    filings, they were compiled with such carelessness and disregard for law and facts that filing

6    them was "outrageously improper" and at least tantamount to bad faith. *Rocha*, 2025 WL

7    1219007, at *1. This is especially true as the Reply was filed after Defendant twice pointed out

8    that Plaintiff's position was wholly unfounded, and Counsel continued to advocate it. *See* Dkts.

9    30, 41. If they were drafted by AI with no oversight, Counsel's wholesale delegation of the

10   research and drafting process to AI, and subsequent lack of candor on the point, rises to the level

11   of bad faith.

12   And again, the ethics rules appear violated by such conduct. Rule 3.1 provides, in

13   relevant part: "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue

14   therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a

15   good faith argument for an extension, modification or reversal of existing law." RPC 3.1

16   (meritorious claims and contentions). Here, there was neither a basis in law nor fact for

17   Counsel's motion. And despite Defendant twice putting him on notice, Counsel pressed his

18   frivolous position instead of withdrawing his motion. While the Court acknowledges that

19   Counsel apologized to opposing counsel for his conduct prior to receiving the Order to Show

20   Cause and now apologizes to the Court, his frivolity wasted the Court's time and Defendant's

21   resources, and sanctions are merited.

22   As to the appropriate sanction, the Court again REFERS Counsel to the Chief Judge for

23   an ethical inquiry into the preparation and filing of the Motion to Strike and associated Reply.

1    The Court also finds financial penalties warranted because Counsel undoubtedly knew or had

2    reason to know that his motion was patently frivolous *before* he filed it.  Filing and later

3    advocating it constituted bad faith or was tantamount to bad faith.  Accordingly, the Court

4    ORDERS Counsel to pay sanctions in the amount of **$3,000.00** to the Court within **fourteen (14)**

5    **days** of this Order.

6         However, Rule 11 financial penalties are not entirely adequate here because, in addition

7    to wasting Court time and delaying this action, Counsel forced Defendant to incur additional

8    expense responding to his motion after it put him on notice that the position taken was legally

9    and factually unsupportable.  Under the Court's inherent powers, "one permissible sanction is an

10   'assessment of attorney's fees'[] . . . instructing a party that has acted in bad faith to reimburse

11   legal fees and costs incurred by the other side." *Goodyear*, 581 U.S. at 107 (quoting *Chambers*,

12   501 U.S. at 45).  And under 28 U.S.C. § 1927, the Court may award attorney's fees where an

13   attorney acts in subjective bad faith by recklessly submitting a frivolous filing.  *See Lake*, 130

14   F.4th at 1070.  The Court therefore further ORDERS Counsel to compensate Defendant for

15   expenses incurred composing its Response at Docket No. 41 to his Motion to Strike.  The parties

16   are directed to meet and confer regarding the reasonable attorney's fees incurred by Defendant.

17   They shall jointly inform the Court of an agreed-upon sum and payment schedule, or of any

18   dispute or request for a hearing, within **thirty (30) days** from the date of this Order.  The Court

19   will promptly review and approve the sum Counsel shall pay to Defendant.

20                          IV.    <u>CONCLUSION</u>

21        The allegations made by Ms. Parker in this case are serious.  She alleges racial

22   discrimination that resulted in her constructive discharge after exercising leave rights.  Some of

23   her claims have been dismissed as time barred because Defendant was never served.  *See* Dkt.

ORDER IMPOSING SANCTIONS - 24

54.  While the Court cannot opine on whether she would have ultimately prevailed on those claims, her attorney's conduct compromised her efforts to receive closure through our legal system and any remedy she was due.

Signing pleadings is not a meaningless formality.  It is the mechanism by which attorneys stake their reputations on the contents of a filing.  AI presents opportunities for efficiency gains to be sure, but the costs to clients and public faith in attorneys is steep where ethical duties and judgment are cast aside and a litigation put on autopilot.  AI may eventually prove flawless, but "[w]henever that day comes, [a] flawless brief will only have meaning because the signature at the bottom does." *ByoPlanet*, 2025 WL 2091025, at *10.

Errors and typographical errors happen despite diligence.  The Court appreciates the time pressures of litigation and would not sanction an attorney for minor misquotations or omitting a pincite.  But the errors in Counsel's filings are not a collection of minor oversights.  They constitute fundamental, material, legal and factual errors submitted to the Court because AI-generated work product, and work product of still undisclosed origin, was subjected to no discernable scrutiny.  That failure was compounded by Counsel certifying, under Rule 11, that he had conducted reasonable inquiry into the supportability of his filings knowing full well he had not done so.

Accordingly, the Court imposes the following sanctions:

- Mr. Desper is PUBLICLY REPRIMANDED and REFERRED to the Chief Judge for an ethical inquiry and further discipline as appropriate;

- Mr. Desper is ORDERED to pay sanctions in the amount of $3,000.00 to the Court within **fourteen (14) days** of this Order;

- Mr. Desper is ORDERED to meet and confer with Defendant regarding fees it incurred preparing the Response at Docket No. 41 to his Motion to Strike and shall, jointly with Defendant, submit the agreed-upon sum and payment schedule to the Court for approval, or inform the Court of any dispute or request for a hearing, within **thirty (30) days** from the date of this Order; and

- Mr. Desper is ORDERED to provide a copy of this Order to his client, Ms. Parker **immediately upon receipt**.

The Clerk is directed to send copies of this Order to the parties and to the Honorable David G. Estudillo.

Dated this 7th day of November, 2025.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER IMPOSING SANCTIONS - 26